# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERALD J. KLEIN, on behalf of himself and all similarly situated,<br><br>                     Plaintiff,<br><br>v.<br><br>TD AMERITRADE HOLDING CORPORATION, TD AMERITRADE INC., AND FREDERIC TOMCZYK<br><br>                     Defendant, | Civil Action No. 3:14-cv-05738-MAS-LGH<br><br>CLASS ACTION<br><br>MOTION DAY: December 15, 2014 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE SHUM GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

      **LITE DEPALMA GREENBERG, LLC**
      Joseph J. DePalma
      Katrina Carroll
      Two Gateway Center, Suite 1201
      Newark, New Jersey 07102
      Tel: (973) 623-3000
      Fax: (973) 623-0858
      Email: jdepalma@litedepalma.com
              kcarroll@litedepalma.com

      *Attorneys for the Shum Group and*
      *Proposed Liaison Counsel for the Class*

      *[Additional counsel on signature page]*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................................. 2

III. ARGUMENT ...................................................................................................................... 5

    A.   The Court Should Appoint The Shum Group as Lead Plaintiff in This Action ............... 5

        i.   The Notice Requirement Has Been Satisfied ................................................................ 6

        ii.  The Shum Group Has the Requisite Financial Interest in the Relief Sought by the Class ................................................................................................................................ 6

    B.   The Shum Group Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ................................................................................................................. 8

        i.   The Shum Group's Claims Are Typical of the Claims of All the Class Members ........ 8

        ii.  The Shum Group Will Adequately Represent the Class ................................................ 9

        iii. The Shum Group's Interests Are Clearly Aligned with Those of the Other Members of the Class ..................................................................................................... 10

    C.   The Shum Group's Choice of Counsel Should Be Approved ....................................... 10

IV.  CONCLUSION ................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Fields v. Biomatrix, Inc.*,
　198 F.R.D. 451 (D.N.J.2000) .................................................................................................. 8

*Garcia v. Intelligroup, Inc.*,
　CIV A 04-4980 JCL, 2005 WL 6074922 (D.N.J. Aug. 10, 2005) ....................................... 7, 8

*In re Able Labs. Sec. Litig.*,
　425 F. Supp. 2d 562 (D.N.J. 2006) ........................................................................................ 9

*In re Cendant Corp. Litig.*,
　264 F.3d 201 (3d Cir. 2001) ............................................................................................... 6, 7

*In re Lucent Technologies Inc. Sec. Litig.*,
　221 F. Supp. 2d 472 (D.N.J. 2001) ........................................................................................ 6

*In re Milestone Sci. Sec. Litig.*,
　183 F.R.D. 404 (D.N.J. 1998) ................................................................................................ 7

*In re Party City Secs. Litig*,
　189 F.R.D. 91 (D.N.J. 1999) .................................................................................................. 7

*Sklar v. Amarin Corp. PLC*,
　CIV.A. 13-CV-06663 F, 2014 WL 3748248 (D.N.J. July 29, 2014) ..................................... 5

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................... *passim*

## I. PRELIMINARY STATEMENT

Presently pending in the United States District Court for the District of New Jersey is the above-captioned securities class action lawsuit (the "Action") against TD Ameritrade Holding Corp., its subsidiary TD Ameritrade, Inc. (collectively, TD Ameritrade Holding Corp. and TD Ameritrade, Inc. are referred to herein as the "Company" or "TD Ameritrade"), and TD Ameritrade's Chief Executive Officer ("CEO") Fredric Tomczyk ("Tomczyk" and, collectively with TD Ameritrade, the "Defendants"). The Action alleges that TD Ameritrade violated its duty to the Company's clients in connection with self-interested routing of those clients' order to venues which paid the maximum liquidity rebate and/or paid for order flow, irrespective of whether such routing would optimize execution quality, in violation of the Company's duty of best execution.

Herein, Kwok L. Shum and Roderick Ford (the "Shum Group" or the "Movants") move for an order appointing the Shum Group as lead plaintiff in this Action and approving its selection of Levi & Korsinsky LLP ("Levi Korsinsky") as Lead Counsel and Lite DePalma Greenberg, LLC ("Lite DePalma") as Liaison Counsel on behalf of the proposed class in the Action.

In addition to timely filing their motion, the Shum Group engaged in millions of dollars' worth of securities transactions with TD Ameritrade and to the best of their counsel's knowledge are the movants with the largest financial interest in the relief sought by the Class. *See* Declaration of Joseph J. DePalma ("DePalma Decl."). The Shum Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil procedure as adequate representatives with claims typical of the other class members. The Shum Group will fairly represent the interests of the class. In addition, Movants' selection of Levi Korsinsky as Lead Counsel and Lite DePalma

1

as Liaison Counsel should be approved as these firms have substantial expertise and experience in securities class action litigation.

## II. STATEMENT OF FACTS

TD Ameritrade is a financial services company which acts as a broker-dealer, and is engaged in the trading of, among other things, stocks and bonds for itself and its over six million clients. ¶ 18.[1] This matter concerns TD Ameritrade's self-interested routing of its clients' orders through venues which paid the maximum liquidity rebate and/or paid for order flow rather than choosing venues which provide "best execution" for its clients. ¶ 98.

Brokers, such as TD Ameritrade, have a duty to their clients to obtain the best price available, execute transactions in the shortest amount of time, maximize the likelihood that transactions are executed in their entirety, and trade at a price that is better than the current public quote, collectively known as the "best execution" of an order. ¶ 30.

Defendants buy and sell stocks, bonds, and other assets for their clients and fill both "marketable" and "nonmarketable" orders. One type of nonmarketable order, a "limit order," is an instruction from the client to deal in a security at a specified price above or below the "ask" or "offer" quote. ¶¶ 7, 18. TD Ameritrade sent these orders to venues which provided the highest liquidity rebates, or payments made by the venue to TD Ameritrade relating to the size of the order. ¶¶ 8-10. This caused their clients to suffer economic losses due to their orders going unfilled, underfilled, or filled at a suboptimal price. ¶ 10.

Some broker-dealers, commonly known as "market makers," hold shares of securities in their own inventory to create an internal market for buyers and sellers. ¶ 21. To guarantee

---

[1] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint" or "Compl.") filed in the above-captioned Action. The facts set forth in the Complaint are incorporated herein by reference.

2

liquidity in their markets, market makers offer payments to intermediaries and retail firms, including brokers, in exchange for the routing of orders to the market maker, a practice commonly known as "payment for order flow." ¶ 22. Other venues have adopted a "maker-taker model," pursuant to which a venue pays for non-marketable orders which add liquidity to the venue (*i.e.*, to liquidity "makers"), and charges entities who route marketable orders which "take" liquidity from the venue. ¶ 26. TD Ameritrade receives payment for order flow from market makers, as well as liquidity rebates from venues that have adopted the maker-taker model. ¶ 28.

In the fourth quarter of 2010, TD Ameritrade routed 62% of limit orders to Citadel Execution Services and 22% of limit orders to Citigroup. ¶ 43. Both venues paid 15 mills per share. *Id*. TD Ameritrade also routed 8% of limit orders to Direct Edge which paid 32 mills per share, the highest rebate for adding liquidity at the time. *Id*. By the fourth quarter of 2012, TD Ameritrade directed all of its nonmarketable limit orders to Direct Edge. ¶ 45. For the third quarter of 2013, TD Ameritrade routed two thirds of marketable orders to Citadel Execution Services and one third to Citigroup, both which paid 2 mills per share of order flow to TD Ameritrade. ¶ 46. TD Ameritrade Holding Corporation received $236 million in 2013, $184 million in 2012, and $185 million in 2011 in liquidity rebates and payments for order flow alone, which was confirmed by Steven Quirk, Senior Vice President of the Trader Group of TD Ameritrade, at a June 17, 2014 hearing before the United State Senate Homeland Security and Governmental Affairs Permanent Subcommittee on Investigations. ¶ 51.

Throughout this time, TD Ameritrade maintained that they sought the best execution for their clients. On their website under the "Frequently Asked Questions" page, TD Ameritrade acknowledged that "[b]rokers are obligated to seek the best execution under current market

3

conditions for their clients' orders. They must regularly and rigorously evaluate the orders they receive to determine which markets, market makers, or Electronic Communications Network (ECNs) offer the most favorable terms of execution." ¶ 31. This sentiment was iterated by Tomczyk in the Company's June 12, 2014 press release, wherein he stated that "[t]here exist today comprehensive regulations and oversight, disclosure and industry competition, as well as the many checks and balances we have implemented over the years, to ensure that we remain focused on satisfying our obligation to seek best execution on behalf of our clients." ¶ 32. Additionally, TD Ameritrade regularly convened a "best execution committee" to ensure that the trades executed by the Company satisfy TD Ameritrade's duty of best execution. ¶¶ 53, 67.

However, TD Ameritrade's practice of preferencing venues that paid for order flow and issued the highest liquidity rebates does not provide TD Ameritrade's clients with best execution. In fact, a May 2012 study by Woodbine Associates, Inc. found that liquidity rebates cost investors as much as $5 billion *per annum* and that orders routed to venues that paid higher liquidity rebates were executed at prices inferior to orders on venues with lesser/no rebates. ¶ 58. Additionally, a recent study by Robert Battalio, *et al.* found that "routing decisions based primarily on rebates/fees appear to be inconsistent with best execution." ¶¶ 59-60.

TD Ameritrade did not act in its clients' best interests and continually routed nonmarketable limit orders to venues that paid the highest liquidity rebates and marketable orders to venues which paid for order flow to the economic detriment of their clients. ¶¶ 68-70. Defendant TD Ameritrade pocketed these rebates and order flow payments rather than passing them along to the clients who placed the orders, and TD Ameritrade did not reduce its commission rates despite its self-interested behavior. ¶¶ 69-71.

4

In so doing, Defendants have violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the SEC and have breached their fiduciary duties, particularly the duty of best execution.  Defendant Tomczyk is also in violation of Section 20(a) of the Exchange Act in connection with TD Ameritrade's violation of its duty of best execution by pursuing a policy of routing orders in a manner which maximized payment for order flow and liquidity rebates at the expense of the Company's clients.

## III. ARGUMENT

### A. The Court Should Appoint The Shum Group as Lead Plaintiff in This Action

The PSLRA sets forth the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(i). The plaintiff who files the initial action must publish notice to the class in a widely circulated national, business-oriented publication within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff.  15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA establishes a presumption that the "most adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa)   has either filed the complaint or made a motion in response to a notice;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B) (iii)(I); *see Sklar v. Amarin Corp. PLC*, CIV.A. 13-CV-06663 F, 2014 WL 3748248 (D.N.J. July 29, 2014). The PSLRA provides that the presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).

As set forth below, the Shum Group satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, the Shum Group is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed as Lead Plaintiff in this Action.

### i. The Notice Requirement Has Been Satisfied

In accordance with the PSLRA notice requirement, counsel for plaintiff in the above-captioned Action caused a notice to be published on September 16, 2014, on *Globe Newswire* pursuant to Section 21D(a)(3)(A) of the Exchange Act. In the notice, counsel announced that it had filed a class action lawsuits on behalf of all clients of TD Ameritrade during the period between September 15, 2011 and September 15, 2014 (the "Class Period"), seeking to recover damages for false and misleading statements and/or omissions of adverse facts by the Company to its clients. The notice stated that potential class members had 60 days from the date of that press release to seek to be appointed lead plaintiff. *See* DePalma Decl. Ex. C (Notice of Class Action Lawsuit).

### ii. The Shum Group Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant with the largest financial loss in the relief sought through the Action.  As demonstrated herein, the Shum Group has the largest known financial interest in the relief sought by the Class.  *See* DePalma Decl. Ex. A.  The movant with the largest financial interest who meets the requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff.  *See In re Lucent Technologies Inc. Sec. Litig.,* 221 F. Supp. 2d 472, 486 (D.N.J. 2001).

As more fully detailed in the attached certification, Movant Shum has transacted approximately 2.9 million shares through TD Ameritrade during the Class Period, worth over $66 million and Movant Ford has transacted over 3 million shares through TD Ameritrade during the Class Period, worth over $52 million.  *See* DePalma Decl. Ex. A.  The Shum Group's losses are typical of other TD Ameritrade clients who were damaged when TD Ameritrade routed trades to maximize kickbacks rather than provide best execution.  Upon information and belief, no other qualified class members have sought, or are seeking, appointment as lead plaintiff with a larger financial interest.

### B. The Shum Group Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(a) requires that the class representative have claims that are typical of those of the class and that the representative will be able to fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a) (3)-(4); s*ee also Garcia v. Intelligroup, Inc.,* CIV A 04-4980 JCL, 2005 WL 6074922, at *4 (D.N.J. Aug. 10, 2005); *In Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage. *In re Cendant Corp. Litig*., 264 F.3d at 264. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See id.; In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, the Shum Group satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

#### i. The Shum Group's Claims Are Typical of the Claims of All the Class Members

The typicality requirement under Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See Garcia*, 2005

8

WL 6074922 at *4. The Shum Group plainly meets the typicality requirement of Rule 23 because (i) the members of the Shum Group have suffered the same injuries as the absent class members; (ii) the members of the Shum Group have suffered as a result of the same set of wrongful conduct by Defendants; and (iii) the claims of the members of the Shum Group are based on the same legal issues. *See Id.* Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Fields v. Biomatrix, Inc.,* 198 F.R.D. 451, 456 (D.N.J.2000) (typicality requires that the claims arise from the same conduct that gave rise to the claim, but it is to be construed liberally).

Nevertheless, in this case, the typicality requirement is met because the Shum Group's claims are identical to the claims made by other Class members. The members of the Shum Group, like the other members of the Class, unknowingly continued to execute trades through their TD Ameritrade accounts during the Class Period despite the fact that the Company was breaching its duty of best execution, and were damaged thereby. Thus, the Shum Group's claims are typical, if not identical, to those of the other members of the Class because the members of the Shum Group have suffered losses similar to those of other Class members and their losses result from Defendants' common course of wrongful conduct. Accordingly, the Shum Group satisfies the typicality requirement of Rule 23(a)(3).

### ii. The Shum Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Adequacy of representation, as required by the PSLRA, is satisfied when the movant has no interests that are antagonistic to the proposed class and where the proposed lead plaintiff has retained experienced and capable counsel. 15 U.S.C. §78u-4(a)(3)(B); *see In re*

*Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006).  Presently, the Shum Group has claims that are typical of all Class members and has retained successful and experienced counsel, who are committed to zealously and efficiently prosecuting this action.  Thus, the Shum Group satisfies the adequacy requirements of Rule 23(a)(4).

### iii. The Shum Group's Interests Are Clearly Aligned with Those of the Other Members of the Class

The Shum Group has proven that it has a considerable interest, based on the large financial losses its members incurred as a result of the Defendants' wrongful conduct, to fully prosecute this Action as best as possible. This motivation, combined with the Shum Group's identical interest with the members of the Class, demonstrates that the Shum Group will vigorously pursue the interests of the Class.  In addition, the Shum Group has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  Therefore, the Shum Group will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, the Shum Group has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because the Shum Group has sustained the largest amount of losses from Defendants' alleged wrongdoing, and is therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), the Shum Group should be appointed as such to lead the Action.

### C. The Shum Group's Choice of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15

U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Shum Group has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class and Lite DePalma as Liaison Counsel. The members of Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. Similarly, Lite DePalma is well qualified to serve as Liaison Counsel. *See* DePalma Decl. Exs. D and E (the firm resumes of Levi & Korsinsky and Lite DePalma).

## IV. CONCLUSION

For the foregoing reasons, the Shum Group respectfully requests that this Court: (i) appoint the Shum Group as Lead Plaintiff; (ii) approve the Shum Group's selection of the law firm of Levi & Korsinsky LLP to serve as Lead Counsel and Lite DePalma as Liaison Counsel; and (iii) grant such other and further relief as the Court may deem just and proper.

DATED: November 17, 2014

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Joseph J. DePalma*
Joseph J. DePalma
Katrina Carroll
Two Gateway Center, 12th Floor
Newark, NJ 07102
(t) (973) 623-3000
(f) (973) 623-0858
Email: jdepalma@litedepalma.com
kcarroll@litedepalma.com

*Counsel for the Shum Group and Proposed Liaison Counsel for the Class*

**LEVI & KORSINSKY LLP**
Eduard Korisnsky
Nancy A. Kulesa
Christopher J. Kupka
Sebastiano Tornatore
30 Broad Street, 24th Floor
New York, NY 10004
(t) (212) 363-7500
(f) (866) 367-6510

*Counsel for the Shum Group and Proposed Lead Counsel for the Class*