IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GERALD J. KLEIN, on behalf of himself and all similarly situated;<br><br>     Plaintiff,<br><br>  vs.<br><br>TD AMERITRADE HOLDING CORPORATION, TD AMERITRADE, INC., and FREDRIC TOMCZYK,<br><br>     Defendants. | **8:14CV396**<br><br>**FINDINGS AND RECOMMENDATION** |

   This matter is before the Court on Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel. (Filing No. 187.) For the reasons set forth below, the undersigned will recommend that the motion be denied.

## FACTS

   Defendant TD Ameritrade, Inc. provides securities broker-dealer services as a financial services company.[1] Plaintiff brought this action on September 15, 2014, challenging Defendants' alleged practice of routing customers' orders to trading venues that pay Defendants the largest payments, rather than to those that provide best execution. (Filing No. 1.) Plaintiff alleges that Defendants made misrepresentations about the manner in which they seek best execution, and that customers would not have placed orders through Defendants but for those false statements. Plaintiff maintains that Defendants' alleged practices resulted in clients being harmed "in the form of economic loss due to their orders going unfilled, underfilled, filled at a suboptimal price, and/or filled in a manner which adversely affects the order's performance post-execution." (Filing No. 75.)

---

[1] Defendant TD Ameritrade Holding Corporation is the parent company of TD Ameritrade, Inc. Fredric Tomczyk is the Chief Executive Officer of TD Ameritrade. TD Ameritrade, Inc., TD Ameritrade Holding Corporation, and Fredric Tomczyk will collectively be referred to herein as "Defendants."

Plaintiff, who asserts he was Defendants' client, has alleged four claims in this litigation: violation of Section 10(b) of the Securities Exchange Act (and Rule 10b-5 promulgated thereunder); violation of Section 20(a) of the Securities Exchange Act; breach of fiduciary duty; and violation of Nebraska's Uniform Deceptive Trade Practices Act.[2]   (Filing Nos. 1, 75.) Plaintiff now seeks an order certifying this suit to proceed as a class action.   An evidentiary hearing was held on Plaintiff's Motion to Certify Class on March 27, 2018.[3]   Expert testimony was presented by each party.[4]

Testifying on behalf of Plaintiff was Mr. Haim Bodek ("Mr. Bodek").   Mr. Bodek is a securities consultant experienced in the field of algorithmic trading.   (Filing No. 189-2; Ex. 4.) Mr. Bodek testified that he was retained to examine Defendants' transactions and to develop metrics in an analysis framework for determining if best execution was achieved, and to identify cases where economic harm occurred due to a failure of best execution.   (TR. 73.)   Mr. Bodek developed an algorithm which he contends can be used to identify and quantify the economic harm suffered in this case.   (Filing No. 189-2; Ex. 4; Ex. 8.)   Mr. Bodek, having identified problems with his original algorithm, supplied a rebuttal expert report which refined his algorithm by expanding defined exemptions or exclusions to eliminate certain order results. (TR. 100-101; Filing No. 197-2 at CM/ECF pp. 40, 53; Filing No. 189-2; Ex. 4; Ex. 8; Ex. 12.) Mr. Bodek testified at the hearing that he is unsure at this point whether his list of exclusions is complete.   (TR. 101.)   Mr. Bodek described that list of exemptions as "evolving" during his deposition, due to market and regulatory changes, and unusual order types.   (Filing No. 197-2 at CM/ECF pp. 53-54; Ex. 12.)   A complete data analysis has not been performed using Mr. Bodek's revised algorithm.   (TR. 108-109; Filing No. 197-2 at CM/ECF p. 38; Ex. 12.)

---

[2]   Plaintiff's state law claims were dismissed by Senior United States District Court Judge Joseph F. Bataillon on March 23, 2016, but Plaintiff's federal securities fraud claims remain.   (Filing No. 104.)

[3]   Closing arguments were held on the record by teleconference on March 29, 2018.

[4]   Defendants filed a motion in limine to exclude the testimony of experts Haim Bodek and Shane Corwin pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993).   By written order dated March 7, 2018, Senior United States District Court Judge Joseph F. Bataillon denied Defendants' motion without prejudice to reassertion. (Filing No. 208.)

Mr. Bodek acknowledged at the hearing that his algorithm could not evaluate customers' state of mind or trading strategies.  (TR. 109.)  He further testified he has not shared his software code for the algorithm with anyone involved in this case.  He stated, however, that he has shared the algorithm *specifications* with the parties and the Court.  (TR. 103.)  Mr. Bodek testified that his algorithm has not been peer reviewed in an academic sense, but that the specifications for the algorithm (not the actual software code for the algorithm) were reviewed by Dr. Shane Corwin ("Dr. Corwin").  (*Id*.)

Dr. Corwin also testified on behalf of Plaintiff.  Dr. Corwin is a finance professor at the University Of Notre Dame.  (TR. 17.)  Dr. Corwin's academic studies focus on the structure and functioning of securities markets.  (*Id*.)  His studies also involve execution costs and quality. (*Id*.)  Dr. Corwin opined that Defendants' routing practices are inconsistent with their duty of best execution, and that Mr. Bodek's methodology could be used to identify best execution failures and the associated harm with customer orders.  (TR. 18.)  Dr. Corwin stated that although he had not been retained to develop a damages model, Mr. Bodek's methodology could be used as a basis to form such a model.  (*Id*.)  Dr. Corwin said that he has never seen the software code for Mr. Bodek's algorithm, but that he has reviewed the description of the algorithm.  (TR. 56.)  Dr. Corwin testified in his deposition that he only skimmed five to ten pages of Mr. Bodek's rebuttal report (which explained the revised algorithm) before submitting his own rebuttal report.  (Filing No. 197-3 at pp. 14-15; Ex. 13.)  Dr. Corwin testified that he did not run any of Mr. Bodek's exclusions against the trading data that has been produced in this case and that it is his understanding that the full algorithm with these exclusions has not been analyzed.  (TR. 49.)

Dr. Allan W. Kleidon (Dr. Kleidon") testified on behalf of Defendants.  Dr. Kleidon is a financial and economic consultant.  (Filing No. 197-14; Ex. 104.)  Dr. Kleidon opined that the methodology proposed by Mr. Bodek does not show that it is possible to identify economic loss for each individual member of the putative class absent individualized inquiry.  (TR. 118).  Dr. Kleidon opined that individualized inquiry is necessary to establish economic harm.  (*Id*.)  For example, according to Dr. Kleidon, it would be necessary to obtain information known only to the customer, such as trading strategy.  (TR. 121.)  Dr. Kleidon noted that the Complaint alleges

that absent Defendants' alleged wrongdoing, the members of the putative class would have gone
to another broker.  (TR. 118.)  Dr. Kleidon indicated that this assertion is speculative, and noted
that Plaintiff actually continued trading with Defendants after he was aware of the allegations.
(TR. 118-19.)   Dr. Kleidon further testified that an algorithm requires individual thought
concerning what exclusions should be included.  As a result, according to Dr. Kleidon, there
would be disagreement as to what would be a legitimate exclusion.  (TR. 120.)

## DISCUSSION

Plaintiff alleges that Defendants violated Section 10(b) of the Securities Exchange Act,
and Rule 10b-5 promulgated thereunder, by failing to provide best execution.   Rule 10(b)-5
states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means
> or instrumentality of interstate commerce, or of the mails or of any facility of any
> national securities exchange, (a) To employ any device, scheme, or artifice to
> defraud, (b) To make any untrue statement of a material fact or to omit to state a
> material fact necessary in order to make the statements made, in the light of the
> circumstances under which they were made, not misleading, or (c) To engage in
> any act, practice, or course of business which operates or would operate as a fraud
> or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.   To recover under Rule 10b-5, a plaintiff must "establish that he suffered
an economic loss that was caused by defendant's fraudulent conduct."  *Newton v. Merrill Lynch,
Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 177 (3d Cir. 2001).   "Failure to show actual
damages is a fatal defect in a Rule 10b-5 cause of action."  *Id.*

Plaintiff requests that the Court certify this case as a class action.  Under Federal Rule of
Civil Procedure 23(a), one or more members of a class may sue or be sued as representative
parties on behalf of all members if (1) the class is so numerous that joinder of all members is
impracticable ("numerosity"); (2) there are questions of law or fact common to the class
("commonality"); (3) the claims or defenses of the representative parties are typical of the claims
or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately
protect the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23.   If the

requirements of numerosity, commonality, typicality, and adequacy are satisfied, a plaintiff must then satisfy one of the three subsections of Federal Rule of Civil Procedure 23(b) to obtain class certification.

Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. Importantly, "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." *Halvorson v. Auto-Owners Insurance Co.*, 718 F.3d 773, 778 (8th Cir. 2013). "The requirement of predominance under Rule 23(b)(3) is not satisfied if individual questions overwhelm the questions common to the class." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 478-79 (8th Cir. 2016) (quotation omitted). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Id.* at 479 (quotations omitted).

Plaintiff maintains that class certification is appropriate based on the common question of whether Defendants sought to maximize their order flow revenue in such a manner that caused them to fail to provide best execution of their clients' trades. Plaintiff defines the proposed class as follows:

> [A]ll clients of TD Ameritrade between September 15, 2011 and September 15, 2014 who placed orders that did not receive best execution, in connection with which TD Ameritrade received either liquidity rebates or payment for order flow, and who were thereby damaged (the "Class").

(Filing No. 187.) Plaintiff's motion also seeks certification of a class for injunctive relief:

> [A]ll clients of TD Ameritrade between September 15, 2011 and September 15, 2014 who placed orders in connection with which TD Ameritrade received either liquidity rebates or payment for order flow and who continue to be clients of TD Ameritrade (the "Injunctive Class").

(*Id.*)

Defendants have asserted numerous arguments in opposition to class certification. Defendants largely argue that certification under Rule 23(b)(3) should be denied because Plaintiff has not shown that common issues predominate over individualized inquiries related to economic loss. Defendants have cited several cases to support their argument, including *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir. 2001). In *Newton*, investors sought class certification of a suit they brought against their broker-dealers, alleging that the broker-dealers breached their duty of best execution. Affirming the district court's denial of the plaintiff's motion for class certification, the Third Circuit Court of Appeals found that the investors did not satisfy the predominance requirement. The Third Circuit explained:

> Whether a class member suffered economic loss from a given securities transaction would require proof of the circumstances surrounding each trade, the available alternative prices, and the state of mind of each investor at the time the trade was requested. This Herculean task, involving hundreds of millions of transactions, counsels against finding predominance.

*Id.* at 187. The court continued, stating: "[d]etermining which class members were economically harmed would require an individual analysis into each trade and its alternatives. The individual questions, therefore, are overpowering." *Id.* at 189.

In further support of their argument, Defendants cited a best execution case from this Court in which class certification was denied. In *Telco Group, Inc. v. Ameritrade, Inc.*, No. 8:05CV387, 2007 WL 203949 (D. Neb. Jan. 23, 2007), the plaintiff filed suit against an internet-based brokerage firm, alleging that the defendant failed to provide best execution. The defendants argued that class certification was improper due to the trade-by-trade analysis required to determine whether best execution was achieved. Citing *Newton*, the Court concluded

that the predominance requirement was not satisfied because individualized inquiries overwhelmed any common issues. *Id.* at *10. In so holding, the Court stated:

> Based on the nature of the plaintiff's claim, the court cannot conclude a particular course of conduct by the defendants gives rise to liability for each class member. The court would have to make a trade-by-trade analysis of each putative class member's account to determine liability for failure to execute trades at the best reasonably available price. Accordingly, the plaintiff has failed to show class claims predominate over individual issues.

*Id*.

The undersigned agrees with the well-reasoned opinions of *Newton* and *Telco*. In this case, Plaintiff has alleged that Defendants' routing practices caused economic harm to him and members of the putative class. In the context of a best execution case, an economic loss is "the difference between the price at which . . . trades were executed and the 'better' price allegedly available from an alternative trading source." *Newton*, 259 F.3d at 178. Thus, to show economic loss, it must be shown that a "better price was obtainable for each executed trade." *Id*. This determination would require a trade-by-trade analysis and would vary from member to member. Economic harm cannot be shown through common evidence.

Plaintiff argues that his expert, Mr. Bodek, has devised an algorithm which can identify and quantify economic harm on a class-wide basis. Plaintiff asserts that *In re NYSE Specialists Secs. Litig.*, 260 F.R.D. 55 (S.D.N.Y. 2009) supports the conclusion that class-wide economic harm can be shown through algorithmic analysis. *Specialists* is distinguishable, however. *Specialists* is not a best execution case. Instead, *Specialists* involved allegations that the defendants violated securities laws by "trading ahead" of customer orders. *Specialists*, 260 F.R.D. at 67. Moreover, the algorithm used to support class certification in *Specialists* had different characteristics. As an initial matter, the algorithm had been created initially by the New York Stock Exchange and then used by the government. (TR. 51-54.) The algorithm used in *Specialists* paired the plaintiffs' orders with actual trades by the defendants trading for their own accounts, and did not have to identify reasonably available prices for executed trades across all market centers. (*Id*.) The algorithm also did not have to take into account many of the exemptions identified by Mr. Bodek in his rebuttal report. (*Id*.) The *Specialists* algorithm did

not have to exclude non-marketable limit orders that could not have been executed more efficiently on a different venue.   (*Id.*)   It also did not have to exclude orders that could not be readily routed, or orders subject to legitimate delays in routing.   (*Id.*)   Further, the algorithm used in *Specialists* was actually provided to the defendants and experts, which has not occurred in this case.

Unlike the situation in *Specialists*, Plaintiff has not shown that he can prove economic harm on a class-wide basis through use of a tested, complete algorithm.   Although Mr. Bodek has explained specifications for his algorithm, Mr. Bodek's actual algorithm and software code has not been shared with Defendants, Dr. Corwin, or the Court.   The algorithm has not even been shown to Plaintiff.   (Filing No. 197-2 at CM/ECF p. 76; Ex. 12.)   Tellingly, as Mr. Bodek acknowledged, his initial algorithm contained errors and had to be revised to account for certain "exemptions," or orders that would need to be excluded from his algorithm.   (TR. 100; Filing No. 197-2 at CM/ECF pp. 40, 53; Filing No. 189-2; Ex. 4; Ex. 8; Ex. 12.)   Mr. Bodek described that list of exemptions as "evolving" during his deposition, due to market and regulatory changes, and unusual order types.   (Filing No. 197-2 at CM/ECF pp. 53-54; Ex. 12.)   Mr. Bodek testified at the hearing that he is unsure at this point whether his list of exclusions is complete.   (TR. 101.)   The calculations that have been shared with the Court and others regarding economic harm did not take into account the exemptions, and a complete data analysis has not been performed using the revised algorithm.   (Filing No. 197-2 at CM/ECF p. 38; TR. 108-109; Ex. 12.)   Further, Mr. Bodek's algorithm has not been peer reviewed in an academic sense.   Dr. Corwin has only reviewed the description of the algorithm and has not seen the actual software code.   (TR. 56.)   Thus, as opposed to the plaintiffs in *Specialists*, Plaintiff has not revealed a formula to calculate economic harm.

The mere *possibility* that an algorithm could be implemented to accurately measure class-wide harm is insufficient to support class certification.   In *Newton*, the plaintiffs' asserted that their expert could calculate the amount of damages sustained by each class member.   However, "in a sworn declaration, plaintiffs' expert provided no model formula, but instead projected that he could devise a formula that would measure damages among the class and serve as a plan for allocation."   *Newton*, 259 F.3d at 187-88.   The Third Circuit, affirming the denial of class-

certification, stated that it was "hesitant to rely on a formulaic nostrum given the consequences if it fail[ed] to meet expectations." *Id*. at 191.

Additionally, there are certain aspects necessary to evaluate economic loss in a best execution case that simply cannot be captured through algorithmic analysis. Mr. Bodek acknowledged that an algorithm cannot account for an individual's state of mind or investment strategy. As found by other courts, investor state of mind is a fundamental consideration in evaluating economic loss in a best execution case. *See Id*. at 187.

The need for trade-by-trade analysis to evaluate whether harm was sustained by each individual customer is underscored by the fact that some of Defendants' clients likely benefited from Defendants' practices. It appears that Plaintiff himself benefitted in certain instances. (Filing No. 197-4 at CM/ECF pp. 32-33.) In *Hoang v. E*TRADE Group, Inc*., 151 Ohio App.3d 363, 366-67 (Ohio Ct. App. 2003), the plaintiff brought suit against an online brokerage service alleging that system interruptions prevented her from executing securities transactions and that execution orders placed were delayed. The plaintiff argued that damages could be ascertained by a mathematical formula. *Id*. at 369-71. Relying upon *Newton*, the court found that class certification was inappropriate because liability as to each individual plaintiff's claims could not be determined on a class-wide basis. The court stated:

> [S]ome of the plaintiffs have suffered damages as a result of [the defendant's] system interruptions while others have not . . . The trading of customers who were affected by the system interruptions would have to be analyzed on a "trade by trade" basis to determine what price the customer might have obtained had the system interruption not occurred.

> This analysis is complex because it requires consideration of each individual transaction, other transactions in the same security that occurred in the market, and the market conditions at the time, including the number of orders waiting to be executed in the market, the size and type of those orders, and other factors. Further, some customers who were affected by the system interruptions may have actually benefited from the interruption, in which case they have no claims.

*Id*. at 370-71. Given the individual, order-by-order inquiries necessary to determine whether each individual customer actually sustained an economic loss, Rule 23(b)(3)'s predominance requirement has not been satisfied.

The undersigned likewise finds that this action fails to satisfy Rule 23(b)(3)'s superiority requirement. Under Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy. *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 161 (S.D. Iowa 2001) (quotation omitted). "Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy." *Id.* The undersigned concludes that resolution of the claims through a class action would create case management issues and would be an inefficient allocation of judicial resources due to the individualized nature of the claims. As in *Telco*, "[a]rbitration, an alternative to class action in this case, would be superior to class litigation." *Telco*, 2007 WL 203949 at *10.

Plaintiff argues that even if he cannot satisfy the requirements of Rule 23(b)(3), class certification is nevertheless proper under subsections (b)(1)(A) or (b)(2) of Rule 23. Rule 23(b)(1)(A) permits certification of a class where "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rules 23(b)(1)(A) and 23(b)(2) differ from Rule 23(b)(3) in that they do not allow a class member to opt out and avoid being bound by the judgment. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

Plaintiff asserts that class certification under Rule 23(b)(1)(A) is warranted because individual actions would create the risk of incompatible standards of conduct for Defendants. Plaintiff explains that allowing individual actions would create the risk that Defendants' order routing practices would be determined to be consistent with its duty of best execution in one action, but inconsistent with that duty in another. (Filing No. 188 at CM/ECF p. 50.)

However, it is not entirely clear how Plaintiff defines his proposed Rule 23(b)(1)(A) class. Although Rule 23(b)(1)(A) was referenced in the briefing accompanying Plaintiff's Motion for Class Certification, it was not specifically mentioned in Plaintiff's Amended Complaint (Filing No. 75). In his briefing of this motion, Plaintiff maintains that the Rule 23(b)(1)(A) class seeks certification of the following question: "[D]o [Defendants'] order routing policies violate its duty of best execution and, therefore, are its disclosures, made to all of its customers, accurate and not misleading?" (Filing No. 199 at CM/ECF p. 87.) Plaintiff contends that this is precisely the issue presented in the Amended Complaint and that his Rule 23(b)(1) class would narrow, not broaden, the proposed class definition. He further argues that the Rule 23(b)(1)(A) class would not add new theories of recovery.

The undersigned is not convinced that class certification under Rule 23(b)(1)(A) is proper. First, it appears that Plaintiff is attempting to expand upon the relief he sought in the Amended Complaint. Such a practice has been found to be impermissible. *See Smith v. Seeco, No. 4:15CV00147, 2016 WL 3541412, \*3 (E.D. Ark. Mar. 11, 2016)* ("[I]t is clear that plaintiffs' class certification motion attempts to broaden the class and add theories of recovery beyond those pled in the complaint, which will not be permitted"). Second, "numerous courts have held that actions under the securities laws are not appropriate for class action treatment under Rule 23(b)(1)." *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) (citing *Crasto v. Kaskel's Estate*, 63 F.R.D. 18 (S.D.N.Y. 1974); *Berley v. Dreyfus & Co.*, 43 F.R.D. 397 (S.D.N.Y. 1967)). "[I]n a securities fraud action where there are some individual questions of reliance and injury . . . certification under Rule 23(b)(1) is not appropriate" because "[c]ertification under Rule 23(b)(1) should properly be confined to those causes of action in which there is a total absence of individual questions." *Horowitz v. Pownall*, 105 F.R.D. 615, 618 (D. Md. 1985) (quotation omitted). As explained above, individual inquiries are necessary to resolve the question of economic harm in this case. Therefore, it will be recommended that certification under Rule 23(b)(1)(A) be denied.

Plaintiff also seeks a separate class under Rule 23(b)(2) to pursue injunctive relief. Plaintiff defines his proposed injunctive class as follows: "[A]ll clients of TD Ameritrade between September 15, 2011 and September 15, 2014 who placed orders in connection with

which TD Ameritrade received either liquidity rebates or payment for order flow and who continue to be clients of TD Ameritrade." (Filing No. 187.)  Plaintiff claims that the only relief sought by the Rule 23(b)(2) class is an injunction requiring Defendants to change their common order routing practices.   According to Plaintiff, the injunctive class does not seek monetary relief.

The Supreme Court has stated that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." _Dukes_, 564 U.S. at 360.    Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a _different_ injunction or declaratory judgment against the defendant.  Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." _Id._ at 360-61 (emphasis in original).   "Although a Rule 23(b)(2) class need not meet the additional predominance and superiority requirements of Rule 23(b)(3), it is well established that the class claims must be cohesive." _Ebert_, 823 F.3d at 480 (internal quotation omitted).   Indeed, [b]ecause unnamed members are bound by the action without the opportunity to opt out of a Rule 23(b)(2) class, even greater cohesiveness generally is required than in a Rule 23(b)(3) class." _In re St. Jude Medical, Inc._, 425 F.3d 1116, 1121 (8th Cir. 2005) (internal quotation omitted).

The undersigned finds that Rule 23(b)(2) certification is inappropriate.   As an initial matter, although the Amended Complaint references Rule 23(b)(2), a separate injunctive class was not defined.  Also, the class definition contained in the Amended Complaint ends September 2014, but the proposed injunctive class includes individuals who continue to be Defendants' clients.  (Filing No. 187.)   _See_ _Costelo v. Chertoff_, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it").

Moreover, as with predominance and superiority, cohesiveness is clearly lacking given the many individual inquiries necessary to determine economic loss.   Regardless of whether a plaintiff seeks damages or injunctive relief, individuals seeking redress under Section 10(b) must demonstrate economic loss.  _See_ _N.Y.C. Employees' Retirement System v. Jobs_, 593 F.3d 1018,

1024 (9th Cir. 2010) ("The [Private Securities Litigation Reform Act of 1995] does not differentiate between plaintiffs seeking legal and equitable remedies, and thus, without an allegation of economic loss, no remedy, equitable or otherwise, is available"), *overruled in part on other grounds,* Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Further, the injunctive relief sought may not benefit all class members. There were instances in which Plaintiff benefitted from Defendants' order routing practices. It is reasonable to conclude that other potential injunctive class members also benefitted at times. Therefore, causing those individuals to be part of a class action in which they cannot opt out may not advance their interests.[5]

Plaintiff also seeks certification of an "issue class" pursuant to Rule 23(c)(4). Rule 23(c)(4) was not referenced in the Amended Complaint. *See* Smith, 2016 WL 3541412 at *3 (stating that the plaintiffs' attempt to broaden the class and add theories of recovery beyond those pled in the complaint would not be permitted). Still, Plaintiff nonetheless argues in his motion that certification is warranted under this provision.

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). However, as stated by the Eighth Circuit, "[e]ven courts that have approved 'issue certification' have declined to certify such classes where the predominance of individual issues is such that limited class certification would do little to increase the efficiency of the litigation." *In re St. Jude Medical Inc.,* 522 F.3d 836, 841 (8th Cir. 2008) (quotation omitted). *See also* In re Genetically Modified Rice Litig., 251 F.R.D. 392, 400 (E.D. Mo. 2008) ("Certification of a limited issues class would lead to procedural difficulties, and a trial limited to common issues would not resolve any individual plaintiff's claims. This approach would do little if anything to increase the efficiency of this litigation"). In light of the individual inquiries involved in this case, Rule 23(c)(4) certification would not promote efficiency or judicial economy. Therefore, the undersigned will recommend that Plaintiff's request for certification under Rule 23(c)(4) be denied.

_____

[5] Because the undersigned concludes that Plaintiff cannot satisfy the requirements of Rule 23(b), the question of whether Plaintiff has satisfied Rule 23(a) will not be directly addressed in this Order.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Senior United States District Court Judge Joseph F. Bataillon that Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel (Filing No. 187) be denied.

Dated this 12th day of July, 2018.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

## ADMONITION

A party may object to a magistrate judge's order by filing an objection within fourteen (14) days after being served with a copy of the findings and recommendation. Failure to timely object may constitute a waiver of any objection.