IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GERALD J. KLEIN, on behalf of himself and all similarly situated; and RODERICK FORD, <br><br>Plaintiffs, <br><br>vs. <br><br>TD AMERITRADE HOLDING CORPORATION, TD AMERITRADE, INC., and FREDRIC TOMCZYK, <br><br>Defendants. | 8:14CV396 <br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the plaintiff's renewed motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel, Filing No. 280. This is a putative class action for securities fraud under 15 U.S.C. § 78a et seq., involving a dispute about a broker's compliance with its duty of best execution that was remanded from the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit"). Filing No. 268; *see Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021). [1]

I.  BACKGROUND

　　A.  Procedural History

The gravamen of the plaintiff's complaint is that "TD Ameritrade's order routing practices violate the company's 'duty of best execution' by systematically sending customer orders to trading venues that pay the company the most money, rather than to venues that provide the best outcome for customers." *Ford*, 995 F.3d at 619. This Court earlier certified a class under Fed. R. Civ. P. 23(b)(3) consisting of "[a]ll clients of TD

---

[1] The State law claims asserted by Plaintiff were dismissed. Filing Nos. 153 and 154.

Ameritrade between September 15, 2011 and September 15, 2014 who placed orders that did not receive best execution, in connection with which TD Ameritrade received either liquidity rebates or payment for order flow, and who were thereby damaged."[2] Filing No. 238, Memorandum and Order at 29; Klein v. TD Ameritrade Holding Corp., 327 F.R.D. 283, 294 (D. Neb. 2018), *rev'd and remanded sub nom. Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021). The Eighth Circuit reversed the class certification order, finding that the class failed to satisfy the Fed. R. Civ. P. 23 requirement that common issues predominate over individual questions with respect to the economic loss class members suffered as a result of the defendant's alleged violation of its duty of best execution in making stock trades. *Id.* at 623–24 (noting that a violation of the duty of best execution does not necessarily cause a customer economic loss).

With respect to the earlier class, "the economic loss allegedly caused by TD Ameritrade's order routing practices [was] 'the difference between the price at which [customers'] trades were executed and the 'better' price allegedly available from an alternative trading source.'" *Id.* at 621 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 178 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (also noting that "Ford maintains that TD Ameritrade caused customers to suffer economic loss by leaving orders unfilled, filling orders at a sub-optimal price, and filling orders in a manner that adversely affected performance after execution."). The plaintiff had argued to this Court and to the Eighth Circuit that the economic loss allegedly caused by TD Ameritrade's order routing practices could have been determined by an algorithm. *Id.* at

---

[2] In its earlier class-certification ruling, this Court found that certification of an injunctive class was premature. Filing No. 238, Memorandum and Order at 27. The plaintiff's request for a limited issue class under Rule 23(c)(4) was rendered moot because the class certified under Rule 23(b)(3) included all the issues in the action. *Id.*

2

621. The Court found the ultimate determination of whether a class member had suffered economic loss from a given securities transaction would require proof of the circumstances surrounding each trade, the available alternative prices, and the state of mind of each investor at the time of the trade. *Id.* at 623 (stating that the plaintiff had not established that his expert's algorithm could solve the predominance problem in this case). The Eighth Circuit concluded that "despite advances in technology, individual evidence and inquiry is still required to determine economic loss for each class member." *Id.* at 624.

The Eighth Circuit found class certification was improper for the additional reason that the class as defined by the district court was an impermissible "fail-safe class." *Id.* It found the proposed class incorporated two contested elements of liability—failure to seek best execution and economic loss. *Id.* at 623 (stating that "[b]y defining the class to include only those customers who were harmed by TD Ameritrade's alleged failure to seek best execution, the district court certified a class in which membership depends upon having a valid claim on the merits.")

    B.    The Present Motion

The plaintiff now moves for certification of the following class of similarly situated persons pursuant to Rule 23(b)(3):

> (1) all clients of TD Ameritrade between September 15, 2011 and September 15, 2014;
>
> (2) who placed orders that were electronically routed by TD Ameritrade without manual review;
>
> (3) in connection with which TD Ameritrade received either liquidity rebates or payment for order flow; and
>
> (4) who paid a commission to TD Ameritrade for execution of the order (the "Class").

3

Filing No. 280, Renewed Motion for Class Certification at 1. The plaintiff also seeks certification of a class for injunctive relief pursuant to Rule 23(b)(2) as follows: "all clients of TD Ameritrade between September 15, 2011 and September 15, 2014 who placed orders in connection with which TD Ameritrade received either liquidity rebates or payment for order flow and who continue to be clients of TD Ameritrade (the "Injunctive Class")."[3]  *Id.*

In the alternative, the plaintiff moves pursuant to Rule 23(c)(4) for certification of an "issues class" consisting of the following:

> (1) all clients of TD Ameritrade between September 15, 2011 and September 15, 2014;
>
> (2) who placed orders that were electronically routed by TD Ameritrade without manual review, and
>
> (3) in connection with which TD Ameritrade received either liquidity rebates or payment for order flow (the "Issues Class").

*Id.* at 2. He argues that resolution of one or more common issues would materially advance the disposition of the litigation as a whole.[4]  Filing No. 281, Plaintiff's Brief at 31.

II. FACTS

Relevant facts can be found in the Court's earlier order on class certification and need not be repeated here. Filing No. 238, Memorandum and Order at 4–12; Filing No.

---

[3] The plaintiff states he renews the injunctive class motion, in part, to prevent any question of waiver. He concedes that the entitlement of the class to injunctive relief cannot be established without further discovery of TD Ameritrade's historical and current routing practices but argues that should not preclude certification at this time.

[4] Those issues are: (1) whether TD Ameritrade's current and former routing practices were intended to maximize its order flow revenue; (2) whether TD Ameritrade's current and former routing practices were in compliance with its common law and statutory duty of best execution; (3) whether TD Ameritrade's public statements concerning its execution practices found in its customer agreement, website, and public filings contain materially untrue statements or omissions; (4) whether TD Ameritrade's order routing practices comprised a deceptive scheme, plan, and course of conduct; (5) whether Defendant Tomczyk or other TD Ameritrade officer or employee acted with the requisite scienter; and (6) whether Defendant Tomczyk is a control person of TD Ameritrade. Filing No. 280, Renewed Motion for Class Certification at 2.

233, Magistrate Judge Order.  Briefly, the plaintiff, Roderick Ford, is a professional investor who has been a TD Ameritrade customer since 2009, when the broker acquired thinkorswim, of which he had been a customer since 2007.[5]  Filing No. 189-4, Declaration of Roderick C. Ford ("Ford Declaration").  He has been trained in trading methods and market structures.  *Id.*  During the Class period, the plaintiff placed 3,556 trades with TD Ameritrade, paying a commission on each executed trade.  *Id.*  While placing orders with TD Ameritrade, the plaintiff has observed poor order execution quality such as delays in filling his orders.  *Id.*

Ford contends that the proposed modified class definition conforms to the Eighth Circuit order.  Ford has modified the definition of the class from those who placed "orders that did not receive best execution" to those who placed orders "orders that were electronically routed by TD Ameritrade without manual review."  *See* Filing No. 238, Memorandum and Order at 2; Filing No. 280, Renewed Motion for Class Certification at 1.  Orders that received manual review would have been excluded from the initial proposed class and the parties appear to agree that orders that were electronically routed without manual review are the focus of the lawsuit.  Filing No. 232, Hearing Transcript at 183, 232.  It is those orders that are challenged as violative of the best execution duty.  *Id.*  Ford has also refined the definition of the class members as customers "who paid a commission to TD Ameritrade for execution of an order."  Filing No. 280, Renewed Motion for Class Certification at 1.  TD Ameritrade admits that the class nominally encompasses the TD Ameritrade customers who placed a stock trade during the relevant time period.

---

[5] The original plaintiffs On November 17, 2016, Magistrate Judge Thalken granted Lead Plaintiffs filed an unopposed motion for leave to withdraw Shum as a lead plaintiff.  Filing No. 154.

Filing No. 326, Defendant's Brief at 25. TD Ameritrade stopped charging commissions in 2019. *Id.* at 17 & n.11. Ford argues that

> The common question that predominates this action is whether TD Ameritrade knowingly sought to maximize its order flow revenue in such a manner that caused it to fail to provide "best execution" of its clients' trades. Such a showing would not be individualized to Plaintiff or any other class member, instead would be based upon, among other things, whether TD Ameritrade's "best execution committee" purposefully adopted practices designed to maximize order flow at the direct expense of its duty to seek best execution. If this showing is made on behalf of the entire class, then this means that TD Ameritrade failed to comply with its duty to seek best execution in connection with every trade it executed during the Class Period. Its customers, who were unaware that TD Ameritrade was violating its duty owed to them, nonetheless paid commissions on those trades, a direct out-of-pocket harm.

Filing No. 329, Plaintiff's Reply Brief at 8.

In opposition to class certification, the defendant first argues that the law of the case precludes class certification. Filing No. 326, Defendant's Brief at 9–10. Next it argues that a TD Ameritrade customer would still need to show that "the order received worse execution than it would have had it been routed to a different market center" in order to recover commissions paid as a result of TD Ameritrade's alleged fraud. *Id.* at 1.

II.   LAW

To justify certification of a class, plaintiffs must meet all of the requirements of Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy of representation) and satisfy one of the three subsections of Rule 23(b). *Ford*, 995 F.3d at 620. Under Fed. R. Civ. P. 23(b)(3), "questions of law or fact common to class members [must] predominate over any questions affecting only individual members . . . ." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016).

Section 10(b) of the Securities Exchange Act "forbids the use, in connection with the purchase or sale of a security, of 'any manipulative or deceptive device or contrivance

6

in contravention of' regulations promulgated by the SEC for the protection of investors." *Id.* (quoting 15 U.S.C. § 78j(b)). "The SEC promulgated Rule 10b-5 to enforce § 10(b) [and] [r]ule 10b-5 prohibits making an untrue statement of material fact or omitting to state a material fact in connection with the purchase or sale of a security." *Id.*; *see* 17 C.F.R. § 240.10b-5(b). The rule "also forbids engaging in 'any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.'" *Id.* (quoting § 240.10b-5(c)). "To recover damages for violations of § 10(b) and Rule 10b-5, a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Id.* at 621 (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013) (internal quotation omitted)). Reliance is presumed where a fiduciary agent adopts a uniform, fraudulent practice and fails to disclose material information so the fiduciary can profit at the principal's expense. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972); *Newton*, 259 F.3d at 176–77. A broker's "failure to disclose the fact that it was selling its order flow to the highest bidders" should be "characterize[d] as alleging an omission of material fact." *Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018); *see also Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854 (8th Cir. 2018) (noting that the core of the claim was failing to disclose the practice of acquiring and retaining trading venue rebates contrary to its customers' interests, thereby not providing best execution for its customers).

"The duty of best execution requires that brokers 'use reasonable efforts to maximize the economic benefit to the client in each transaction.'" *See Ford*, 995 F.3d at

7

619 (quoting *Newton*, 259 F.3d at 173). A securities broker need not make "trade by trade determinations," but it must adhere to this duty in the aggregate and may not put its interests ahead of its customers. *Lewis,* 879 F.3d at 852 (involving allegations that defendant broker violated the duty of best execution by directing nearly all customer non-directed standing limit orders to trading venues that offered the largest rebates to broker, and by not passing these payments on to its customers).

"Best execution cases differ from typical securities fraud cases under Rule 10b-5, where the alleged fraud directly affects the price of a security." *Ford*, 995 F.3d at 621. To succeed on the merits of a best execution claim, a plaintiff must show that the broker's challenged practices "caused its customers to suffer economic loss." *See id.* at 622. To justify class certification, a plaintiff "must show that he can establish this type of economic loss for a class of plaintiffs in a manner consistent with the predominance requirement of Fed. R. Civ. P. 23." *Id.* at 621.

In a securities fraud case involving churning, a species of securities fraud, a plaintiff may show economic loss in the form of the amount of commissions paid and the loss of value of the account. *Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 906 F.2d 1206, 1218 (8th Cir. 1990) (noting that to find that damages could not be shown if an account recognizes a net profit would mean securities brokers would be free to churn their customers' accounts with impunity so long as the net value of the account did not fall below the amount originally invested); *McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 736 F.2d 1254, 1257 (8th Cir. 1984) (recognizing that customers defrauded by the deceptive practice of churning sustained two distinct types of damages: "(1) loss of commissions, interest, and fees paid by the customer; (2) loss of the value of the account."); *Forsythe v. Hales,* 255 F.3d 487, 491 (8th Cir. 2001) (noting that "[a]lthough

8

Davis dealt with "churning" of investment accounts, its reasoning is equally applicable [to cases involving wrongful conversion of securities]").

A broker's "failure to disclose the fact that it was selling its order flow to the highest bidders" should be "characterize[d] as alleging an omission of material fact." *Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018); *see also Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854 (8th Cir. 2018) ("However, the core of Lewis's complaint is that Scottrade did not disclose its practice of not obtaining best execution, permitting it to acquire and retain trading venue rebates contrary to its customers' interests. Fairly read, Lewis's complaint alleges that Scottrade failed to disclose that it was not providing best execution for its customers.").

III.  DISCUSSION

The Court first finds that the defendants law-of-the-case argument is unavailing. The Eighth Circuit did not address a commission-based theory of economic loss. The Court's findings on numerosity, commonality, typicality and adequacy of representation were not disturbed by the Eighth Circuit. The Eighth Circuit found the class deficient because the individual issues of proof of economic loss by application of an algorithm predominated over questions common to the class. Also, this Court's earlier finding that the class members are entitled to a presumption of reliance under the Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) was not disturbed by the Eighth Circuit. Because it is impossible to prove how customers would have behaved had their broker-agent disclosed its self-interested order routing practices, reliance is properly presumed. Accordingly, the Eighth Circuit's opinion provides no barrier to certification of the revised Class. Further, the plaintiff is not barred from seeking commission-based damages at this time because, though he sought commissions as part

9

of his requested damages in his first motion to certify, neither this Court nor the Court of Appeals discussed that component.

The Court finds the revised Class definition proposed here solves the infirmities the Eighth Circuit identified in its ruling on the earlier class certification. The revised class relates to a different class composition and involves determinations that were not made by the Eighth Circuit. A damages assessment based on commissions would be consistent for every class member. The only individualized inquiry would be to determine the number of trades executed by TD Ameritrade on each account during the class period, which is a mathematical exercise. The calculation of commissions paid by each class member is a straightforward calculation that can be easily derived from the records maintained by TD Ameritrade.

Also, the revised Class proposed here is not an impermissible "fail-safe" class. No criteria for membership of the proposed Class depends on a contested issue of liability. *See Ford,* 995 F.3d at 624. Membership in the proposed class is objectively verifiable through TD Ameritrade's records and is not subject to dispute.

The status as a TD Ameritrade customer, the placement of a trade, electronic routing, and the payment of commissions can all be determined from TD Ameritrade's records. Proving that TD Ameritrade did not meet its duty of best execution during the Class Period will require proof of the algorithms TD Ameritrade used for routing its customers' orders and a showing that the process TD Ameritrade followed in developing and implementing its systems—including the consideration of payment for order flow and liquidity rebates in routing trades—elevated TD Ameritrade's own interests over their customers' interests. The Class must also show that TD Ameritrade failed to disclose this practice to their customers. The Court agrees with the plaintiff that "TD Ameritrade's

10

routing algorithms either comply with the duty of best execution or they do not." Filing No. 329 at 15, Plaintiff's Reply Brief.

Assuming the plaintiffs can prove that TD Ameritrade failed to comply with its duty to seek best execution, the revised class seeks out-of-pocket losses suffered by TD Ameritrade customers through the payment of commissions on those trades, rather than what could have been gained had the trade been routed to a trading venue that was not providing a "kickback" to TD Ameritrade.  The latter measure of economic loss would require individualized proof, as noted by the Eighth Circuit, the former does not.  The Court agrees with the plaintiffs that the payment of a commission or fee to receive a certain execution quality when that standard of execution is not provided constitutes a measurable, out-of-pocket loss for TD Ameritrade's customers.  This is sufficient to satisfy the requirement of economic loss under the federal securities laws. *See Davis*, 906 F.2d at 1218.  If TD Ameritrade is shown to have violated securities laws, the customers who paid commissions in reliance on TD Ameritrade fulfilling its duty of best execution should be able to recover at least their out-of-pocket payments to TD Ameritrade.

The Court finds no authority for the proposition that out-of-pocket commissions do not qualify as a component of economic loss for the purposes of securities fraud.  The defendant's argument that the commissions paid to TD Ameritrade qualify as "damages" but not as the "economic loss" that qualifies as an element of a securities fraud claim defies logic.  That an additional measure of economic loss, if proved, may be available does not diminish the availability of out-of-pocket commissions paid as one form of compensable economic loss.

Absent certification, TD Ameritrade's routing practices would have to be proved individually each TD Ameritrade customer.  This would most likely involve expert analysis

11

in each case, which would be a substantial waste of judicial resources and could result in inconsistent verdicts. The alleged misconduct at issue is a uniform policy, practice, or procedure applied to all members of the class.[6] Because the cost of prosecuting such individual cases would be prohibitive in view of small recoveries, those harmed by TD Ameritrade's alleged misconduct would have no recourse unless a class is certified.[7] Accordingly,

IT IS ORDERED:

1. The plaintiff's renewed motion to certify a class (Filing No. 280) is granted;

2. The following class is certified under Fed. R. Civ. P. 23(b)(3):

    (1) all clients of TD Ameritrade between September 15, 2011 and September 15, 2014;

---

[6] TD Ameritrade's alleged misconduct is actionable as securities fraud, as noted in the Court's earlier class-certification order. *See Klein*, 327 F.R.D. at 294; *see also Zola v. TD Ameritrade, Inc.*, 889 F.3d 920, 924 (8th Cir. 2018); *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1154–55 (9th Cir. 2017) (Schwab, putting its own financial interests above those of the putative class, "defrauded their clients by purporting to obtain best execution for their clients' trading orders while omitting to disclose to their clients that nearly all trades are routed to UBS, regardless of any best execution consideration."); *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017) ("A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law . . . [A] broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem."); *cf. Rayner v. E*TRADE Fin. Corp.*, 248 F. Supp. 3d 497, 503 (S.D.N.Y. 2017), *aff'd*, 899 F.3d 117 (2d Cir. 2018) (finding allegations that the defendant routed orders to maximize kickback revenue were barred by SLUSA; and *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 916 (7th Cir. 2017)) ("A claim that a fiduciary that trades in securities for a customer's account has taken secret side payments is well inside the bounds of securities law.").

[7] Though it need not reach the issues in view of its determination, the Court notes that if certification were not proper under Rule 23(b)(3), it would grant certification of an injunctive class under Rule 23(b)(2). Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). The plaintiff seeks one injunction for the benefit of the entire class. The injunctive relief would require TD Ameritrade to alter its routing practices and/or public disclosures so that its conduct is no longer deceptive. All members of the class would benefit equally from such an injunction.

Further, if certification under Rule 23(b)(3) were not appropriate, the Court would certify an issues class under Rule 23(c)(4) to determine the issue of liability on the merits on the question of whether TD Ameritrade complied with the duty of best execution and knowingly misrepresented its compliance with its duty of best execution during the class period. If TD Ameritrade would prevail on that issue, the claims of all the class members would be resolved. If the plaintiff proved that TD Ameritrade was violating Rule 10b-5 by making its representations during the class period, any individual trials or determinations would be greatly simplified.

(2) who placed orders that were electronically routed by TD Ameritrade without manual review;

(3) in connection with which TD Ameritrade received either liquidity rebates or payment for order flow; and

(4) who paid a commission to TD Ameritrade for execution of the order.

Excluded from the Class are the defendants, each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest.

3. Roderick Ford is appointed as Class Representative, and

4. The law firm of Levi and Korsinsky LLP is appointed as Class Counsel.

5. Defendants' motion for oral argument, Filing No. 328, is denied as moot.

Dated this 20th day of September, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge